UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- X

ADNAN SHEIKH,

**Docket No.: 1:24-cv-06309 (RML)**

Plaintiff,

-against-

PORT AUTHORITY OF NEW YORK AND NEW JERSEY, PORT AUTHORITY POLICE DEPARTMENT, PORT AUTHORITY POLICE OFFICER KONRAD KULEC, individually and in his official capacity, PORT AUTHORITY SGT. HUNTER, individually and in his official capacity, PORT AUTHORITY SGT. KOMOROWSKI, individually and in his official capacity, PORT AUTHORITY DET. CORRADINO, individually and in his official capacity, PORT AUTHORITY DET. PAMPALONE, individually and in his official capacity, , PORT AUTHORITY POLICE OFFICER RICHARD CIULLO, individually and in his official capacity, PORT AUTHORITY POLICE OFFICER JANE/JOHN DOES #1-10 (representing as yet unknown and unidentified members of the Port Authority Police Department), individually and in their official capacities, CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, NEW YORK CITY POLICE OFFICER JANE/JOHN DOES #11-20 (representing as yet unknown and unidentified members of the New York City Police Department), individually and in their official capacities, QUEENS COUNTY DISTRICT ATTORNEY'S OFFICE, QUEENS COUNTY DISTRICT ATTORNEY, individually and in her official capacity, and QUEENS COUNTY ASSISTANT DISTRICT ATTORNEY JANE/JOHN DOES #21-30 (representing as yet unknown and unidentified members of the Queens County District Attorney's Office), individually and in their official capacities,

**AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

Defendants.

-------------------------------------------------------------------- X

Plaintiff ADNAN SHEIKH (hereinafter, "SHEIKH" and/or "Plaintiff"), by his attorneys,

HORN WRIGHT, LLP, complaining of Defendants, PORT AUTHORITY OF NEW YORK AND

NEW JERSEY, PORT AUTHORITY POLICE DEPARTMENT, PORT AUTHORITY POLICE

OFFICER KONRAD KULEC, individually and in his official capacity, PORT AUTHORITY SGT. HUNTER, individually and in his official capacity, PORT AUTHORITY SGT. KOMOROWSKI, individually and in his official capacity, PORT AUTHORITY DET. CORRADINO, individually and in his official capacity, PORT AUTHORITY DET. PAMPALONE, individually and in his official capacity, PORT AUTHORITY POLICE OFFICER RICHARD CIULLO, individually and in his official capacity, PORT AUTHORITY POLICE OFFICER JANE/JOHN DOES #1-10 (representing as yet unknown and unidentified members of the Port Authority Police Department), individually and in their official capacities, CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, NEW YORK CITY POLICE OFFICER JANE/JOHN DOES #11-20, (representing as yet unknown and unidentified members of the New York City Police Department), individually and in their official capacities, QUEENS COUNTY DISTRICT ATTORNEY'S OFFICE, QUEENS COUNTY DISTRICT ATTORNEY, individually and in her official capacity, and QUEENS COUNTY ASSISTANT DISTRICT ATTORNEY JANE/JOHN DOES #21-30 (representing as yet unknown and unidentified members of the Queens County District Attorney's Office), individually and in their official capacities, alleges as follows:

## PRELIMINARY STATEMENT

1.     This is a civil rights action for money damages against Defendants, PORT AUTHORITY OF NEW YORK AND NEW JERSEY, PORT AUTHORITY POLICE DEPARTMENT, PORT AUTHORITY POLICE OFFICER KONRAD KULEC, individually and in his official capacity, PORT AUTHORITY SGT. HUNTER, individually and in his official capacity, PORT AUTHORITY SGT. KOMOROWSKI, individually and in his official capacity, PORT AUTHORITY DET. CORRADINO, individually and in his official capacity, PORT

AUTHORITY DET. PAMPALONE, individually and in his official capacity, , PORT AUTHORITY POLICE OFFICER RICHARD CIULLO, individually and in his official capacity, PORT AUTHORITY POLICE OFFICER JANE/JOHN DOES #1-10 (representing as yet unknown and unidentified members of the Port Authority Police Department), individually and in their official capacities, CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, NEW YORK CITY POLICE OFFICER JANE/JOHN DOES #11-20, (representing as yet unknown and unidentified members of the New York City Police Department), individually and in their official capacities, QUEENS COUNTY DISTRICT ATTORNEY'S OFFICE, QUEENS COUNTY DISTRICT ATTORNEY, individually and in her official capacity, and QUEENS COUNTY ASSISTANT DISTRICT ATTORNEY JANE/JOHN DOES #21-30 (representing as yet unknown and unidentified members of the Queens County District Attorney's Office), individually and in their official capacities, for committing acts under color of law and depriving Plaintiff SHEIKH of his rights secured by the Fourth, Fifth, Sixth, and Fourteenth Amendments of the Constitution and laws of the United States.

2.      Plaintiff seeks damages, both compensatory and punitive, award of costs, interest, attorney's fees, and such other and further relief as this Court deems just and equitable.

**JURISDICTION**

3.      This action is brought pursuant to 42 U.S.C. § 1983 and the Fourth, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution. Jurisdiction is conferred upon this Court by 42 U.S.C. § 1983 and by 28 U.S.C. §§ 1331 and 1343(3) and (4) of the aforementioned Constitutional provisions.

**VENUE**

4. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) since all of the events and omissions giving rise to Plaintiff's claims occurred within the County of Queens and the actual place of employment of all of the individual Defendants is the County of Queens in the Eastern District of New York. The events surrounding this lawsuit occurred in the County of Queens, in the Eastern District of New York. Additionally, Plaintiff resides with the County of Nassau in the Eastern District of New York.

## THE PARTIES

5. Plaintiff ADNAN SHEIKH is a resident of the United States who lives within the Eastern District of New York.

6. Upon information and belief, at all relevant times described herein, Defendant PORT AUTHORITY OF NEW YORK AND NEW JERSEY ("PORT AUTHORITY") was and is a corporation duly organized and existing under and by virtue of the laws of the States of New York and New Jersey.

7. Upon information and belief, at all relevant times described herein, Defendant PORT AUTHORITY, by its agents and/or employees, operated, maintained, and controlled the PORT AUTHORITY POLICE DEPARTMENT ("PAPD"), including all police officers, detectives, sergeants, and supervisors thereof.

8. Defendant PORT AUTHORITY POLICE OFFICER KONRAD KULEC ("KULEC"), upon information and belief, is a police officer with the PAPD who is being sued in his individual and official capacities and is an employee of Defendants PORT AUTHORITY and PAPD. Upon information and belief, at all relevant times described herein, Defendant KULEC was acting under color of state law within the scope of his employment as a police officer with PAPD.

9.      Defendant PORT AUTHORITY SGT. HUNTER ("HUNTER"), upon information and belief, is a sergeant with the PAPD who is being sued in his individual and official capacities and is an employee of Defendants PORT AUTHORITY and PAPD. Upon information and belief, at all relevant times described herein, Defendant HUNTER was acting under color of state law within the scope of his employment as a police officer with PAPD.

10.     Defendant PORT AUTHORITY SGT. KOMOROWSKI ("KOMOROWSKI"), upon information and belief, is a sergeant with the PAPD who is being sued in his individual and official capacities and is an employee of Defendants PORT AUTHORITY and PAPD. Upon information and belief, at all relevant times described herein, Defendant KOMOROWSKI was acting under color of state law within the scope of his employment as a police officer with PAPD.

11.     Defendant PORT AUTHORITY DET. CORRADINO ("CORRADINO"), upon information and belief, is a detective with the PAPD who is being sued in his individual and official capacities and is an employee of Defendants PORT AUTHORITY and PAPD. Upon information and belief, at all relevant times described herein, Defendant CORRADINO was acting under color of state law within the scope of his employment as a police officer with PAPD.

12.     Defendant PORT AUTHORITY DET. PAMPALONE ("PAMPALONE"), upon information and belief, is a detective with the PAPD who is being sued in his individual and official capacities and is an employee of Defendants PORT AUTHORITY and PAPD. Upon information and belief, at all relevant times described herein, Defendant PAMPALONE was acting under color of state law within the scope of his employment as a police officer with PAPD.

13.     Defendant PORT AUTHORITY POLICE OFFICER RICHARD CIULLO ("CIULLO"), upon information and belief, is a police officer with the PAPD who is being sued in his individual and official capacities and is an employee of Defendants PORT AUTHORITY and

PAPD. Upon information and belief, at all relevant times described herein, Defendant CIULLO was acting under color of state law within the scope of his employment as a police officer with PAPD.

14. Defendant PORT AUTHORITY POLICE OFFICER JANE/JOHN DOES #1-10 ("PAPD DOES") are members of PAPD who are being sued in their individual and official capacities, are employed by Defendants PORT AUTHORITY and PAPD and were police officers, detectives, sergeants, or supervisors. Upon information and belief, at all relevant times described herein, PAPD DOES were acting under color of state law within the scope of their employment as members of the PAPD and employed by Defendants PORT AUTHORITY and PAPD. Plaintiff does not know the real names and shield numbers of PAPD DOES.

15. Upon information and belief, at all relevant times described herein, Defendant CITY OF NEW YORK ("CITY") was and continues to be a municipal corporation organized and existing by virtue of the laws of the State of New York.

16. Upon information and belief, at all relevant times described herein, Defendant CITY, by its agents and/or employees, operated, maintained, and controlled the NEW YORK CITY POLICE DEPARTMENT, including all supervising officers and police officers thereof.

17. Upon information and belief, at all relevant times described herein, Defendant NEW YORK CITY POLICE DEPARTMENT ("NYPD") is a subdivision and/or agency of Defendant CITY and has an office at 1 Police Plaza, New York, New York 10038.

18. Defendant NEW YORK CITY POLICE OFFICER JANE/JOHN DOES #11-20 ("NYPD DOES") are members of NYPD who are being sued in their individual and official capacities, are employed by Defendants CITY and NYPD and were police officers, detectives, sergeants, or supervisors. Upon information and belief, at all relevant times described herein,

NYPD DOES were acting under color of state law within the scope of their employment as members of the NYPD and employed by Defendants CITY and NYPD. Plaintiff does not know the real names and shield numbers of NYPD DOES.

19.     Upon information and belief, Defendant QUEENS COUNTY DISTRICT ATTORNEY'S OFFICE ("QCDAO") was and continues to be a subdivision and/or agency of Defendant CITY and has an office at 125-01 Queens Boulevard, Kew Gardens, New York 11415.

20.     At all relevant times described herein, Defendant QUEENS COUNTY DISTRICT ATTORNEY ("QCDA") was and continues to be a subdivision and/or agency of Defendant CITY and has an office at 125-01 Queens Boulevard, Kew Gardens, New York 11415.

21.     Defendant QCDA, individually and in her official capacity, is a duly elected official and is charged with investigating and prosecuting violations of state and local criminal statutes occurring within Queens County, New York. QCDA has an office at 125-01 Queens Boulevard, Kew Gardens, New York 11415. At all relevant times described herein, QCDA was acting under color of state law within the scope of her employment as the Queens County District Attorney.

22.     Defendant QUEENS ASSISTANT DISTRICT ATTORNEY JANE/JOHN DOES #21-30 ("ADA DOES") are members of the QCDAO who are being sued in their individual and official capacities and are employed by Defendants CITY and QCDAO. Upon information and belief, at all relevant times described herein, ADA DOES were acting under color of state law within the scope of their employment as members of QCDAO and employed by Defendants CITY and QCDAO.

## NATURE OF THE CASE

23.     This is an action seeking recovery for deprivation of Plaintiff's civil rights guaranteed to him under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States

Constitution committed by the above-named municipal Defendants.

24.     Plaintiff SHEIKH was subjected to arrest, criminal charges, and commencement of criminal proceedings based on perjurious testimony, material misrepresentations, and fabricated evidence presented by Defendants at the Queens County Supreme Court, Criminal Part, Kew Gardens, New York on or about November 1, 2021, and the filing of misdemeanor information on or about November 2, 2021.

25.     The criminal proceedings were favorably terminated on or about February 15, 2022.

26.     Plaintiff was subjected to degrading and abusive treatment, unlawful search, unlawful arrest, malicious prosecution, denial of his right to familial association, unlawful detention, illegal restraint, an unlawful disruption of familial relations, and violation of his substantive and procedural due process rights under the laws of the United States.

## FACTUAL ALLEGATIONS

27.     Plaintiff SHEIKH is a 47-year-old man who is employed as a senior lead asset manager. Mr. SHEIKH has two (2) children.

28.     On the date and time of the incident, Plaintiff SHEIKH was married to Sadia Sheikh ("Sadia") and they both resided at the marital residence located in New Hyde Park, New York, with their two (2) children.

29.     On the date and time of this incident, Mr. SHEIKH was picking up an acquaintance of his that had arrived at JFK Airport.

30.     Mr. SHEIKH arrived at JFK Airport between 5:30 p.m. and 6:00 p.m. Plaintiff parked his vehicle at or near the Terminal 4 parking lot.

31.     When Mr. SHEIKH exited his vehicle, he noticed that Sadia had followed him to the Airport. Sadia began to approach Plaintiff and was belligerent and aggressive towards him. All the while she screamed and yelled at Plaintiff.

32.     Mr. SHEIKH, not wanting to argue with Sadia or have a confrontation with her, quickly left the Terminal 4 parking lot. At no time did Plaintiff engage with Sadia, harass Sadia, menace Sadia, and/or strike Sadia.

33.     In fact, Mr. SHEIKH's actions were at all times filmed as Terminal 4 had multiple security cameras.

34.     Upon information and belief, upon Plaintiff leaving Terminal 4, Sadia called 911.

35.     Sadia complained that Plaintiff and she got into a verbal dispute and that Plaintiff punched her in the abdomen and slapped her.

36.     In reality, Plaintiff SHEIKH never struck Sadia which was confirmed by the video surveillance.

37.     Upon Mr. Sheikh's return to his vehicle, he was approached and confronted by Defendants KULEC and/or HUNTER and/or KOMOROWSKI and/or CORRADINO and/or PAMPALONE and/or CIULLO and/or PAPD DOES and/or NYPD DOES. Defendants KULEC and/or HUNTER and/or KOMOROWSKI and/or CORRADINO and/or PAMPALONE and/or CIULLO and/or PAPD DOES and/or NYPD DOES informed Plaintiff of Sadia's allegations. Defendants KULEC and/or HUNTER and/or KOMOROWSKI and/or CORRADINO and/or PAMPALONE and/or CIULLO and/or PAPD DOES and/or NYPD DOES further stated that Mr. SHEIKH would be arrested.

38.     Mr. SHEIKH told Defendants KULEC and/or HUNTER and/or KOMOROWSKI and/or CORRADINO and/or PAMPALONE and/or CIULLO and/or PAPD DOES and/or NYPD

DOES to view the surveillance footage which would demonstrate that Sadia had fabricated the entire incident. Upon information and belief, Defendants KULEC and/or HUNTER and/or KOMOROWSKI and/or CORRADINO and/or PAMPALONE and/or CIULLO and/or PAPD DOES and/or NYPD DOES did in fact review the video surveillance footage.

39.     Nonetheless, despite having reviewed the video surveillance and having irrefutable evidence that Mr. SHEIKH was innocent, Defendants KULEC and/or HUNTER and/or KOMOROWSKI and/or CORRADINO and/or PAMPALONE and/or CIULLO and/or PAPD DOES and/or NYPD DOES arrested and charged Mr. SHEIKH.

40.     Mr. SHEIKH was arrested and charged with Assault in the Third Degree in violation of NY PL § 120.00(1); Menacing in violation of NY PL § 120.15; and Harassment in the Second Degree in violation of NY PL § 240.26-1.

41.     Defendants had neither valid evidence for the arrest of Plaintiff nor legal cause or excuse to seize and detain him after viewing irrefutable video evidence of his innocence.

42.     That, in detaining Plaintiff without a fair and reliable determination of probable cause, Defendants abused their power and authority as a policymaker of the PAPD and/or NYPD under the color of State and/or local law. It is alleged that Defendants PORT AUTHORITY, PAPD, CITY, and NYPD, via its agents, servants, and employees, routinely charged persons with crimes they did not commit.  Plaintiff was but one of those persons.

43.     On or about November 1, 2021, Defendants arrested Plaintiff and transported him, upon information and belief, to PAPD detention and thereafter to an NYPD precinct for processing. All the while Defendants knew that Plaintiff SHEIKH was completely innocent and there was no probable cause to arrest Plaintiff.

44.     Upon information and belief, Plaintiff was thereafter transported to NYPD Central Booking where he was further processed and placed in a holding cell and kept overnight until arraignment the next day.

45.     Plaintiff was arraigned and charged with Assault in the Third Degree in violation of NY PL § 120.00(1); Menacing in violation of NY PL § 120.15; and Harassment in the Second Degree in violation of NY PL § 240.26-1. After arraignment, Plaintiff was released on his own recognizance.

46.     Defendant KULEC signed the accusatory instrument for the prosecution of Plaintiff SHEIKH, dated November 2, 2021.

47.     Defendants had no evidence to substantiate the charges. The prosecution of Plaintiff was continued with malice.

48.     The prosecution of Plaintiff was continued after probable cause was vitiated. In point of fact, Defendants all along had irrefutable evidence of Plaintiff's innocence via JFK Airport video surveillance which they in fact viewed. Despite this, Mr. SHEIKH was arrested and his prosecution was continued, despite knowledge that such arrest and prosecution was unlawful and in violation of Plaintiff's rights.

49.     Defendants had in their possession all of the information which would have exculpated Plaintiff from the onset. Further, Defendants refused to turn over this exculpatory evidence and upon information and belief either deleted and/or destroyed same.

50.     Plaintiff SHEIKH's prosecution continued after there was no longer probable cause to believe that Plaintiff had any involvement in any of the alleged and charged crimes. The prosecution was continued solely to cover-up Defendants' unlawful and unconstitutional conduct.

51.     Information about the arrest and/or prosecution was intentionally and maliciously released to the public, impugning Plaintiff's reputation and causing Plaintiff shame and humiliation.

52.     Plaintiff was required to appear in court multiple times after Defendants had incontrovertible evidence that Plaintiff was not involved in the alleged crimes he was arrested and charged with.

53.     Plaintiff SHEIKH's prosecution terminated on or about February 15, 2022, when all charges were dismissed.

## AS AND FOR A FIRST COUNT
### 42 U.S.C. § 1983 – False Arrest
(*Against Defendants* PORT AUTHORITY, PAPD, CITY, NYPD, KULEC, HUNTER, KOMOROWSKI, CORRADINO, PAMPALONE, CIULLO, PAPD DOES, and NYPD DOES)

54.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in those paragraphs of the Amended Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

55.     That the aforesaid arrest and imprisonment of Plaintiff by Defendants PORT AUTHORITY, PAPD, CITY, NYPD, KULEC, HUNTER, KOMOROWSKI, CORRADINO, PAMPALONE, CIULLO, PAPD DOES, and NYPD DOES was under the color of State Law, without any reasonable cause or belief that Plaintiff was in fact guilty of the crime for which he was charged.

56.     That said Defendants, their agents, servants, and employees, falsely arrested and illegally imprisoned Plaintiff and intentionally subjected Plaintiff to confinement which Plaintiff was conscious of, and said confinement was not otherwise privileged or consented to by Plaintiff.

57. That by reason of the aforesaid unlawful arrest and imprisonment, caused willfully and maliciously by Defendants, their agents, servants, or employees, Plaintiff was wrongfully deprived of his rights and privileges and benefits as provided to him under the Constitution of the United States of America, was subjected to pain and suffering, great indignities, ridicule, scorn, loss of freedom, humiliation, mental distress, was prevented from attending his usual activities, was injured in his reputation in the community, and was further caused to incur monetary expense, including legal fees.

58. That the aforesaid false arrest and imprisonment of Plaintiff violated the Fourth, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution.

59. That Defendants committed the foregoing acts willfully and with malicious disregard for Plaintiff's rights and are, therefore, liable to Plaintiff for compensatory as well as punitive damages.

60. As a proximate result of Defendants' intentional and malicious actions, Plaintiff SHEIKH was greatly humiliated, injured in his reputation, caused to incur attorney's fees, associated legal expenses, and other special damages, and has suffered great mental anguish causing damages, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages, attorney's fees, and costs.

### AS AND FOR A SECOND COUNT
### 42 U.S.C. § 1983 – Malicious Prosecution
***(Against All Defendants)***

61.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in those paragraphs of the Amended Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

62.     That Defendants instituted and continued the criminal proceedings against Plaintiff in the absence of any probable cause and/or evidence for said prosecution.

63.     That the prosecution against Plaintiff was with malice.

64.     That the dismissal against Plaintiff was a favorable termination in favor of Plaintiff.

65.     That said malicious prosecution of Plaintiff by Defendants constitutes a deprivation of Plaintiff's Fourth, Fifth, Sixth, and Fourteenth Amendment Constitutional rights.

66.     As a proximate result of Defendants' intentional and malicious actions, Plaintiff SHEIKH was greatly humiliated, injured in his reputation, caused to incur attorney's fees, associated legal expenses, and other special damages, and has suffered great mental anguish causing damages, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages, attorney's fees, and costs.

### AS AND FOR A THIRD COUNT
### 42 U.S.C. § 1983 – Failure to Intervene
#### (*Against All Defendants*)

67.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in those paragraphs of the Amended Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

68.     On or about November 1, 2021, Plaintiff was subjected to false arrest and unlawful search and seizure of Plaintiff's person at the hands of Defendants.

69. Despite Defendants having irrefutable evidence of Plaintiff's innocence, Defendants nonetheless arrested Plaintiff.

70. Each of the Defendants new and/or deliberatively ignored the fact that the false accusations, detainment, false arrest, seizure, and illegal search of Plaintiff's person violated the rights guaranteed to Plaintiff under the Fourth, Fifth, Sixth, and Fourteenth Amendments of the U.S. Constitution and 42 U.S.C. § 1983.

71. Each of the said Defendants had the authority, ability, and concurrent duty under 42 U.S.C. § 1983 to prevent the false arrest, wrongful detainment, and illegal search of Plaintiff, yet neglected to prevent said violations from occurring and, further, failed to intervene to protect or aid Plaintiff when such violations did, in fact, occur.

72. Specifically, each and every one of the Defendants had the opportunity and responsibility to prevent the wrongful detainment and abuse of process against Plaintiff because each Defendant had actual notice of the wrongful actions of the other Defendants at the scene of the incident.

73. Defendants had the power to prevent the continued due process violations against Plaintiff yet failed to prevent or dismiss the unlawful charges against Plaintiff, or to protect Plaintiff from the unwarranted penalties that followed from the charges against him.

74. As a direct consequence of the actions of Defendants acting in furtherance of their duties as agents of their respective municipalities and agencies, Plaintiff suffered injuries, including but not limited to, stigmatizations, embarrassment, loss of liberty, and the infringement of his rights guaranteed to him under the U.S. Constitution.

75. As a direct consequence of the actions of Defendants, Plaintiff SHEIKH suffered loss of standing in the community, loss of time, loss of freedom, loss of quality of life, damage to

his name and reputation, special damages, attorney's fees, incidental fees/costs, and other financial impairments.

76.     That, by reason of the foregoing, Plaintiff SHEIKH suffered and continues to suffer irreparable injury and monetary damages, was greatly humiliated, injured in his reputation, caused to incur attorney's fees, associated legal expenses, and other special damages, and has suffered great mental anguish causing damages, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), as well as punitive damages, attorneys' fees, and costs.

## AS AND FOR A FOURTH COUNT
### 42 U.S.C. § 1983 – Abuse of Process
#### (*Against All Defendants*)

77.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in those paragraphs of the Amended Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

78.     Defendants intentionally, recklessly, and maliciously filed and/or caused to be filed, a false, inaccurate, and/or misleading misdemeanor complaint against Plaintiff.

79.     The false misdemeanor complaint lodged by Defendants against Plaintiff was done with knowledge that the facts contained therein were false, misleading, and/or otherwise inaccurate.

80.     Defendants filed said false misdemeanor complaint against Plaintiff with an ulterior purpose/motive to subject Plaintiff to punishment without just cause and in order to protect Defendants.

81.     Defendants subjected Plaintiff to the criminal justice system without just cause or reason. Defendants abused the criminal justice system in falsely arresting, falsely charging, and

falsely prosecuting Mr. SHEIKH in an attempt to protect Defendants and satisfy their personal goals of covering up their wrongdoing and to further their own purposes of exercising their privilege for their own warped sense of power.

82. Defendants created false and fabricated statements which included, *inter alia*, the accusatory instrument filed against Plaintiff.

83. Moreover, Defendants invented and fabricated circumstances which were used to support the false charges in the charging instrument that was used to prosecute Plaintiff by Defendants QCDAO, QCDA, and QCDA DOES. The falsehoods were included in the charging instrument.

84. Defendants' use of criminal process for the aforementioned improper purpose amounted to an abuse of said process, which was initiated and used to the detriment of Plaintiff solely for a purpose that was/is outside the legitimate ends of the legal process. The purpose behind Defendants' actions was to protect Defendants and to harass, intimidate, coerce, silence, and punish Plaintiff.

85. Defendants did not initiate the arrest and prosecution of Plaintiff as a result of actual knowledge that a crime was committed.

86. Defendants did nothing to stop the criminal proceedings which amounted to an abuse of said process, which was initiated and used to the detriment of Plaintiff solely for a purpose that was/is outside the legitimate ends of the criminal process.

87. As a direct consequence of the actions of Defendants, acting in furtherance of their duty as agents of the PORT AUTHORITY, PAPD, CITY and NYPD, Plaintiff suffered injuries, including but not limited to, stigmatization, embarrassment, loss of liberty, and the infringement of his rights guaranteed to him under the U.S. Constitution.

88.     That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages, in excess of ONE MILLION DOLLARS ($1,000,000.00), as well as punitive damages, costs, attorneys' fees, and any other relief this Court may find just and proper.

### AS AND FOR A FIFTH COUNT
### 42 U.S.C. § 1983 – Fabricating of Evidence
### (*Against All Defendants*)

89.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in those paragraphs of the Amended Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

90.     Defendants KULEC and/or HUNTER and/or KOMOROWSKI and/or CORRADINO and/or PAMPALONE and/or CIULLO and/or PAPD DOES and/or NYPD DOES fabricated evidence against Plaintiff to deprive Plaintiff of his Fourth, Fifth, Sixth, and Fourteenth Amendment rights, and jointly caused such deprivation of rights by acting in concert to unlawfully charge Plaintiff with crimes that he did not commit.

91.     Defendants KULEC and/or HUNTER and/or KOMOROWSKI and/or CORRADINO and/or PAMPALONE and/or CIULLO and/or PAPD DOES and/or NYPD DOES further deprived Plaintiff of his due process rights, specifically by falsifying facts in the charging instrument filed against Mr. SHEIKH. Said charging instrument was prepared by Defendant KULEC.

92.     All of the factual allegations prepared by Defendant KULEC are false. These false allegations, and others, led to the false arrest and prosecution of Plaintiff, Plaintiff being accused of crimes which he did not commit, and Plaintiff's false prosecution. Defendants' narration of the false and fabricated allegations against Plaintiff were likely to influence a jury's decision if

presented at trial. This information was forwarded to QCDA and/or QCDA DOES for Defendants QCDA and QCDA DOES with the intention of it to be used to unlawfully prosecute Plaintiff.

93.     The actions by Defendants denied Plaintiff his liberty and due process rights. These rights are guaranteed to Plaintiff under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

94.     As a direct consequence of the actions of Defendants, Plaintiff suffered loss of standing in the community, loss of time, loss of freedom, loss of quality of life, and loss of regular income, damage to his name and reputation, special damages, attorney's fees, incidental fees/costs, and other financial impairments.

95.     Defendants knew or should have known that the wrongful detainment, false arrest, wrongful imprisonment, and unlawful prosecution of Mr. SHEIKH violated Plaintiff's rights, guaranteed to him under the Fourth, Fifth, Sixth, and Fourteenth Amendments and 42 U.S.C. § 1983.

96.     Defendants had the authority, ability, and concurrent duty under 42 U.S.C. § 1983 to prevent the false arrest, wrongful detainment, and unlawful prosecution of Plaintiff, yet these Defendants neglected to prevent said violations from occurring and, further, failed to intervene to protect or aid Plaintiff when such violations did in fact occur.

97.     Defendants knew or should have known that the fabricated accusations against Mr. SHEIKH were violative of his Fourth, Fifth, Sixth, and Fourteenth Amendment rights to due process and were tantamount to the unfair treatment that he suffered at the hands of each and every Defendant, in violation of Plaintiff's fundamental rights under the Constitution.

98.     As a direct consequence of the actions of the Defendants, Plaintiff suffered loss of standing in the community, loss of time, loss of freedom, loss of quality of life, and loss of regular

income, damage to his name and reputation, special damages, attorney's fees, incidental fees/costs, and other financial impairments.

99.    That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages, in excess of ONE MILLION DOLLARS ($1,000,000.00), as well as punitive damages, costs, attorneys' fees, and any other relief this Court may find just and proper.

### AS AND FOR A SIXTH COUNT
### 42 U.S.C. § 1983 – Brady Violation
### (*Against All Defendants*)

100.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in those paragraphs of the Amended Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

101.    Plaintiff alleges numerous Constitutional violations under 42 U.S.C. § 1983 which include, but are not limited to: fabrication of evidence; *Brady* violations in the withholding of exculpatory evidence; *Giglio* violations; destruction of evidence; failure to follow proper procedures under the Due Process law pursuant to the Constitution of the United States; failure to intervene; falsely testifying; falsely arresting; falsely detaining and falsely imprisoning Plaintiff for an unjustified prolong period; conspiracy; abuse of process; and malicious prosecution of Plaintiff, all of which support Plaintiff's claims for Constitutional violations.

102.    Defendants fabricated evidence as it relates to the incidents involving Plaintiff, which constituted violations of his Constitutional and civil rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments. This conduct was intentional and malicious and based on Defendants' intent and desire to deny Plaintiff the right to a fair trial, to examine the evidence

against him, to properly prepare a defense, to be free from unlawful incarceration, and to not be wrongfully and maliciously subjected to the prosecutorial process.

103. Defendants withheld evidence in violation of *Brady v. Maryland,* 373 US 83 (1963), as it relates to the incidents involving Plaintiff, which constituted violations of his constitutional rights under the Fourth, Fifth, Sixth and Fourteenth Amendments. Defendants' conduct was intentional and malicious and based on a desire to subject Plaintiff to prosecution and prolonged loss of liberty and, thus, ultimately deny Plaintiff his Due Process and liberty rights as ascribed to him under the Constitution.

104. Defendants concealed evidence related to the incidents involving Plaintiff, which constituted *Brady* violations and Due Process violations pursuant to the Fourth, Fifth, Sixth and Fourteenth Amendments of the Constitution. Defendants' conduct was intentional and malicious and based on a wish to deny Plaintiff his Fourth, Fifth, Sixth and Fourteenth Amendment rights to Due Process, to examine the evidence against him, the right to a fair trial, and to his liberty rights under the Constitution.

105. Defendants deprived Plaintiff of his Fourth, Fifth, Sixth, and Fourteenth Amendment rights, and caused such deprivation of rights by falsely detaining, unlawfully accusing, wrongfully arresting, and falsely imprisoning Plaintiff. Said acts were motivated by a sadistic desire to harm Plaintiff, protect and cover up the improper conduct of Defendants, and to violate Plaintiff's Constitutional and civil rights and thus deny him access to equal rights under the law.

106. Plaintiff was detained, arrested, and maliciously prosecuted by Defendants in an attempt to deny him his basic right to freedom and liberty.

107.     Defendants failed to follow proper procedures, policies, and regulations as it relates to the incidents involving Plaintiff which constitutes violations of his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments. Defendants' conduct was intentional and malicious and based on the cruel motivation to wrongfully prosecute and deprive Plaintiff of his liberty in violation of his rights as guaranteed under the Constitution and for the unlawful purpose of protecting Defendants.

108.     Defendants individually and collectively knew at the time of Plaintiff's arrest, and at all times since then, that the evidence they had in connection with the charges brought against Plaintiff were false and inconsistent with and insufficient to establish his guilt with respect to any of the crimes charged.

109.     In arresting, detaining, interrogating, and prosecuting Plaintiff, each of the Defendants knew or should have known they were violating federal law and Plaintiff's Constitutional and civil rights set forth herein, and that they had failed to prevent the same and, therefore, acted in concert to harm Plaintiff.

110.     Defendants withheld information and conspired to cover up the illegal acts set forth herein, despite the truth being apparent. Defendants QCDA and QCDA DOES offered and were allowed to provide false documents, false statements, and perjured testimony with the full knowledge and support of Defendants KULEC, HUNTER, KOMOROWSKI, CORRADINO, PAMPALONE, CIULLO, PAPD DOES, and/or NYPD DOES.

111.     Defendants QCDA and QCDA DOES, when confronted with the falsity of the charges, did refuse to take any action against Defendants, thus continuing the ongoing Constitutional violations against Plaintiff.

112.    As a direct result of Defendants' unlawful actions of each of them, Plaintiff was wrongfully subjected to criminal proceedings, maliciously prosecuted, forced to endure multiple mandatory court appearances, and face potential incarceration.

113.    As a direct and proximate result of the aforesaid acts of Defendants and each of them, Plaintiff suffered great harm, mental anguish, and violation of rights from then until now and he will continue to so suffer in the future having been greatly humiliated and mentally injured, as a result of the foregoing unlawful acts of Defendants.

114.    Plaintiff was forced to incur great expense and special damages for defending against the false criminal charges and in clearing his name against the unfounded and unwarranted allegations by Defendants which have been and continue to be a serious burden to Plaintiff.

115.    Plaintiff was forced to incur great expense and special damages as a result of Defendants' continuing actions and QCDA and QCDA DOES' refusal to take any action against the perpetrators of the unlawful conduct as against Plaintiff and/or to investigate Defendants and the various law enforcement personnel involved in the arrest and criminal prosecution of Plaintiff based upon false and fabricated evidence.

116.    That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages, in excess of ONE MILLION DOLLARS ($1,000,000.00), as well as punitive damages, costs, attorneys' fees, and any other relief this Court may find just and proper.

## AS AND FOR A SEVENTH COUNT
### *Monell*
### (*Against Defendants PORT AUTHORITY and/or CITY*)

117.  Plaintiff repeats, reiterates, and realleges each and every allegation contained in those paragraphs of the Amended Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

**Failure to Supervise and Failure to Train**

118.  Defendants PORT AUTHORITY and/or CITY were responsible for supervising, overseeing, and controlling its respective subordinates.

119.  Defendants PORT AUTHORITY and/or CITY had an express and/or implied duty to provide a reasonably safe environment for their citizens, including Plaintiff. At a minimum, they had a duty to keep him from being falsely arrested and maliciously prosecuted by their employees, which was foreseeable based upon past instances of misconduct, which were known to Defendants PORT AUTHORITY and/or CITY.

120.  Defendants PORT AUTHORITY and/or CITY had an express and/or implied duty to provide a reasonably safe environment for their citizens, including Plaintiff. At a minimum, they had a duty to assure that their employees did not wrongfully and falsely arrest Plaintiff, which was foreseeable based upon past instances of misconduct, which were known to Defendants PORT AUTHORITY and/or CITY.

121.  Despite having this knowledge, Defendants PORT AUTHORITY and/or CITY failed to take any remedial measures to prevent the aforementioned violations of Plaintiff's Constitutional rights.

122.   The countenancing of this behavior created an environment within the PAPD, NYPD, and QCDAO wherein members were allowed to continue with their behavior, which led to the Constitutional rights of citizens being violated, including Plaintiff.

123.   Defendants PORT AUTHORITY and/or CITY intentionally failed to adequately supervise, control, oversee, train, and/or monitor their employees and members, who had a history of engaging in official misconduct, and failed to implement measures to prevent their employees and members from conspiring with each other to cover up their official misconduct.

124.   Defendants PORT AUTHORITY and/or CITY intentionally failed to adequately supervise, control, oversee, train, and/or monitor their employees and members from conspiring with each other to cover up their official misconduct and prevent them from continuously violating the Constitutional rights of individual citizens, including Plaintiff.

125.   Defendants PORT AUTHORITY and/or CITY negligently hired, retained, and/or supervised their employees and members when they knew or should have known that they posed a threat to individuals.

126.   Defendants PORT AUTHORITY and/or CITY knew or should have known of their employees and members' propensity for the conduct which caused Plaintiff's injuries, prior to the occurrence of the injuries.

127.   At all times relevant hereto, Defendants' actions were willful, wanton, malicious, reckless, and/or outrageous in their disregard for the rights and safety of Plaintiff.

128.   Defendants PORT AUTHORITY and/or CITY were aware that there was a substantial likelihood that permitting their employees and members to carry on their regular duties would deprive the public of their civil rights, but failed to take adequate measures to resolve the wrong.

129. Defendants PORT AUTHORITY and/or CITY's failure and refusal to adequately investigate their employees' actions, acquiescence in Defendants' conduct, failure to take any remedial action against Defendants, allowing Defendants to remain employed as police officers and/or assistant district attorneys, gross negligence in their supervision of Defendants, and deliberate indifference to the rights of others by failing to act on information that Constitutional rights were being violated, subjects Defendants PORT AUTHORITY and/or CITY to supervisory liability for the crime and Constitutional violations perpetrated against Plaintiff.

130. That, by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages, was greatly humiliated, injured in his reputation, caused to incur attorney's fees, associated legal expenses, and other special damages, and has suffered great mental anguish causing damages, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), as well as costs, attorneys' fees, and any other relief this Court may find just and proper.

**Custom, Policy, and Practice**

131. It was the custom, policy, and practice of Defendants PORT AUTHORITY and/or CITY to tolerate, condone, and encourage Constitutional violations, such as those alleged by Plaintiff above, by failing to properly punish, charge, reprimand, and investigate allegations and incidents of misconduct by their employees and members.

132. Employees and members of the PORT AUTHORITY and/or CITY, such as the Individual Defendants in this action, were aware at all times alleged in this Complaint that their unconstitutional conduct would not be investigated or questioned, and that they would receive no reprimand or be punished for their conduct.

133. Employees of PORT AUTHORITY and/or CITY, such as the Individual

Defendants in this action, were aware at all times alleged in this Complaint that their unconstitutional conduct would not be investigated or questioned, and that they would receive no reprimand or be punished for their conduct and, further, that they would be indemnified from civil liability regardless of the illegality or unconstitutionality of their actions.

134.　By failing to supervise, train, and reprimand such PORT AUTHORITY and/or CITY employees and members of PAPD, NYPD, and QCDAO, Defendants PORT AUTHORITY and CITY caused the injuries to Plaintiff through the actions and inactions of the Individual Defendants.

135.　By maintaining a *de facto* policy of automatic indemnification, Defendants PORT AUTHORITY and/or CITY caused the injuries to Plaintiff through the actions and inactions of the Individual Defendants.

136.　It was the custom, policy, and practice of Defendants PORT AUTHORITY and/or CITY to blatantly ignore complaints and/or widespread allegations of malfeasance in order to shield the PAPD, NYPD, and QCDAO from receiving any bad press that would be generated from an investigation of police misconduct and/or misconduct by assistant district attorneys.

137.　This custom, policy, and practice of Defendants PORT AUTHORITY and/or CITY to ignore complaints and/or widespread allegations of assault and other malfeasance created an environment where foreseeable Constitutional violations by their employees and members were rampant, including the violations of Plaintiff's Constitutional rights.

138.　Defendants PORT AUTHORITY and/or CITY's failure to take action against their employees and members involved in this incident and in other similar incidents was part of a custom, practice, and procedure of neglect and deliberate indifference that directly caused the injuries to Plaintiff.

139.   As authorized representatives of Defendants PORT AUTHORITY and/or CITY, the employees and members' conduct of illegal arrests or threats of arrest without probable or reasonable cause, searches and seizure of arrestees, and malicious prosecutions constituted a custom, policy, and practice which renders Defendants PORT AUTHORITY and/or CITY liable to Plaintiff as a "Person" acting under the color of state law.

140.   Defendants PORT AUTHORITY and/or CITY are, therefore, liable for violations of Plaintiff's Constitutional rights as caused by the Individual Defendants, as described in more detail in the foregoing paragraphs, and Plaintiff has suffered damages therefrom.

141.   That, by virtue of Defendants PORT AUTHORITY and/or CITY's failure and refusal to adequately investigate the Individual Defendants' actions, acquiescence in the Individual Defendants' conduct, failure to take any remedial action against the Individual Defendants, allowing the Individual Defendants to remain employed, gross negligence in their supervision of the Individual Defendants, and deliberate indifference to the rights of others by failing to act on information that Constitutional rights were being violated by the Individual Defendants, Defendants PORT AUTHORITY and/or CITY, which employed these Individual Defendants and policymakers during the relevant time period, exhibited a *de facto* custom, policy, or usage of unconstitutional conduct sufficient for the imposition of municipal liability under *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).

142.   As a proximate result of Defendants PORT AUTHORITY and/or CITY's customs, policies, and practices for creating an environment that tolerates, encourages, and condones such Constitutional violations, Plaintiff was greatly humiliated, injured in his reputation, caused to incur attorney's fees, associated legal expenses, and other special damages, and has suffered great

mental anguish causing damages, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00) plus attorney's fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants as follows:

A. Under the First Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00) plus punitive damages, attorney's fees, and costs;

B. Under the Second Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00) plus punitive damages, attorney's fees, and costs;

C. Under the Third Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00) plus punitive damages, attorney's fees, and costs;

D. Under the Fourth Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00) plus punitive damages, attorney's fees and costs;

E. Under the Fifth Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00) plus punitive damages, attorney's fees, and costs;

F. Under the Sixth Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00) plus punitive damages, attorney's fees, and costs;

G. Under the Seventh Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00) plus attorney's fees and costs; and

H. Such other and further relief as the Court deems just and proper.

Dated: Garden City, New York
November 1, 2024

Respectfully Submitted,
**HORN WRIGHT, LLP**
*Attorneys for Plaintiff Adnan Sheikh*

By: /s/ *Pablo A. Fernandez*
Pablo A. Fernandez

400 Garden City Plaza, Suite 500
Garden City, New York 11530
Ph: 516.355.9696
paf@hornwright.com